# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

        -vs-                                            No. CR 01-1031 LH

TYSON PETER WOODS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Judgment of Acquittal (Docket No. 52), filed December 27, 2001. The Court, having reviewed the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that the Motion is not well taken and will be **denied**.

Following a two and one-half day trial, the Jury found Defendant Woods guilty on all four Counts charged in the Indictment: Count I - second degree murder of Lionel Joe, in violation of 18 U.S.C. §§ 1153, 1111, and 2; Count II - assault of Lionel Joe with a dangerous weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3); Count III - using and brandishing a firearm during and in relationship to assaulting Lionel Joe with a dangerous weapon, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and Count IV - accessory after the fact in disposing of a knife used by Lesley B. to assault with the intent to murder Erin A., in violation of 18 U.S.C. §§ 1153 and 3. The Court also instructed the Jury on the lesser included offenses to Count I of voluntary manslaughter and involuntary manslaughter as to Count I and the Verdict form included these alternate verdicts.

Defendant now renews his motions for judgment of acquittal made at the close of his and the government's cases, moving for acquittal, pursuant to FED. R. CRIM. P. 29(c), on all counts of the Indictment. Alternatively, he asks for a finding of guilt to either of the lesser included manslaughter charges in Count I and dismissal of the remaining counts.

The hurdle facing Defendant is high; a jury verdict will be overturned "only . . . if 'no reasonable juror could have reached the disputed verdict.'" *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001)(quoting *United States v. Whitney*, 229 F.3d 1296, 1300-01 (10th Cir. 2000)). In determining the sufficiency of the evidence, the Court reviews "the record as a whole and consider[s] the collective inferences reasonably drawn therefrom." *Id.* (citing *United States v. Jenkins*, 175 F.3d 1208, 1215 (10th Cir. 1999)). Where conflicting evidence exists, the Court is not to "question the jury's conclusions regarding the credibility of witnesses or the relative weight of the evidence," *id.* (citing *United States v. Springfield*, 196 F.3d 1180, 1184 (10th Cir. 1999)), but "must presume that the trier of fact resolved any such conflicts in favor of the prosecution," *id.* (quoting *Wingfield v. Massie*, 122 F.3d 1329, 1333 (10th Cir. 1997)). The Court's determination, then, is "simply . . . 'whether [the] evidence, if believed, would establish each element of the crime.'" *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001)(alteration in original)(quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)). "'[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'" *Magleby*, 241 F.3d at 1312 (quoting *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)). The Court "must ask 'only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt.'" *Id.* at

1311-12 (alterations in original)(quoting *Springfield*, 196 F.3d at 1184).

With regard to his second degree murder conviction, Defendant maintains that the government failed to present any evidence establishing malice aforethought and that the evidence he presented is more consistent with a verdict of voluntary manslaughter or involuntary manslaughter and shows that he acted in self defense. Defendant also questions the testimony of several witnesses, noting that Lucas Begay and Erin A. were intoxicated on the night in question and it was very dark; that Lucas Begay stood to benefit from his testimony because of the substantial assistance to authorities provision in his plea agreement, pursuant to U.S.S.G. § 5K1.1; and that Dr. Ross Zumwalt, only one week before trial, revised his original opinion that the cause of death was due to stab wounds inflicted by Lesley Begay. Defendant further asserts that there was ample evidence he was hit or struck on the forehead, causing profuse bleeding, that he had difficulty seeing because of the blood flowing over his left eye, and that he did not chase Lionel Joe after the fight because he could not see and was sick. Defendant also notes that he consistently told authorities and others that he had been attacked by Lionel Joe.

Second degree murder is the "unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a)). The government can meet the malice aforethought requirement by presenting proof of: "(1) intent-to-kill without the added ingredients of premeditation and deliberation; (2) intent-to-do-serious-bodily-injury; (3) depraved-heart; or (4) [killing during the] commission of certain felonies." *Vallo*, 238 F.3d at 1247 (quoting *Wood*, 207 F.3d at 1228). The existence of a depraved heart may be established "by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Id.* (quoting *Wood*, 207 F.3d

3

at 1228). Additionally, the Jury may consider "whether [a defendant] used a weapon or other instrument upon his victim in such a manner as may be expected naturally and probably to cause death." *United States v. Celestine*, 510 F.2d 457, 459-60 (9th Cir. 1975)(citing *Government of the Virgin Islands v. Lake*, 362 F.2d 770, 775 (3d Cir. 1966)).

Dr. Ross Zumwalt, Chief Medical Investigator for the State of New Mexico, testified at trial that Lionel Joe bled to death from the combined effects of more than sixty sharp force injuries to his body, including four wounds to his head and three to the face which were consistent with being inflicted by Defendant's semi-automatic pistol. DNA expert Rebecca Holt testified that traces of Lionel Joe's blood were found on the gun. One blow to the upper left forehead caused a round, cave-in fracture to Mr. Joe's skull, with bleeding around the brain underneath. One or more blows to the left side of Mr. Joe's face, knocked out four teeth and broke the upper jaw. Additionally, the victim had blunt force injuries extending through the thickness of the scalp to the skull, caused by at least four different blows, to the top and back of his head. Not only did Defendant admit hitting Lionel Joe with his pistol, but he also made no attempt to render aide or seek assistance for Mr. Joe, who was left to bleed to death at a remote location. Dr. Zumwalt testified that it was possible that the victim could have survived if he had received prompt medical treatment.

Thus, there was more than substantial evidence from which the Jury could and did infer malice aforethought on the part of the Defendant. Additionally, given the minor nature of Defendant's alleged injury, a small cut to his forehead, and the large number of defensive wounds to the victim's hands and his left ankle, a jury could find beyond a reasonable doubt that Defendant did not act in self defense. Furthermore, the Jury was instructed on possible factors to take into consideration in evaluating the testimony of witnesses, including that of an alleged accomplice, and Defendant has

4

offered no reason why its determinations regarding credibility and the relative weight of the evidence and the collective inferences reasonably drawn therefrom should be set aside.

As to Count IV, Defendant points to conflicting testimony from Lucas Begay as to whether Defendant threw out the knife that Lesley Begay used to stab Lionel Joe and Erin A. and also argues that the fact that authorities could not find the knife casts further doubt on Defendant's guilt. Defendant also cites his testimony that he did not assist Lesley Begay in stabbing Erin A. and her inconclusive testimony in this regard.

Again, it is for the Jury, not the Court, to assess credibility and determine the weight to be accorded conflicting testimony. Also, whether he assisted in stabbing Erin A. is not material to any charge brought against Defendant.

Defendant also moves for acquittal of his convictions on Counts II and IV, claiming that his intoxicated state negated the specific intent required on the charges that he assaulted Lionel Joe with a dangerous weapon with intent to do bodily harm and assisted Lesley Begay with the intent to hinder and prevent his apprehension and punishment by disposing of the knife used to assault with intent to murder Erin A. This, he maintains, combined with the lack of malice aforethought for Count I, also makes a conviction on Count III inapplicable. Defendant concludes his argument by stating that disinterested observers of this matter would disagree with the verdict and have difficulty rendering a verdict of guilty.

Voluntary intoxication "may negate the existence of the specific intent required for conviction of many crimes." *United States v. Shuckahosee*, 609 F.2d 1351, 1356 (10th Cir. 1980). The Jury was so instructed regarding both Counts II and IV. In his Motion, however, Defendant asserts only that he presented evidence that he was intoxicated to the same general level as other individuals

involved that night, two of whom passed out at some time during the evening, and that he presented evidence of his diminished capacity.

Defendant has not shown in any way that his intoxication created a mental impairment sufficient to negate the existence of specific intent, that he was so intoxicated that he had no power of reason or that he was utterly incapable of forming the requisite intent. *Cf. United States v. Boyles*, 57 F.3d 535, 542-43 (7th Cir. 1995)(post-trial statement that so intoxicated unable to form required intent is insufficient to require jury instruction on voluntary intoxication), *cited and quoted in United States v. Briseno-Mendez*, No. 96-2218, 1998 WL 440279, at *11-12 (10th Cir. Jul. 17, 1998)). In fact, Defendant points to no evidence of his diminished capacity other than that he was intoxicated. The Jury considered the degree of Defendant's intoxication in regard to his ability to form the specific intent required in Counts II and IV. The Court has been given and finds no reason to question the Jury's weighing of this evidence.

**IT IS HEREBY ORDERED** that the Motion for Judgment of Acquittal (Docket No. 52), filed December 27, 2001, is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE